UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
EDWARD FULLER, individually and on behalf of
all others similarly situated,

                               Plaintiff,

      - against -

THE STOP & SHOP SUPERMARKET
COMPANY LLC,

                              Defendant.
-------------------------------------------------------------x

                      **OPINION & ORDER**

               No. 22-CV-9824 (CS)

<u>Appearances</u>:

Spencer Sheehan
Angele Aaron
Sheehan & Associates, P.C.
Great Neck, New York
*Counsel for Plaintiff*

Paul W. Garrity
Sheppard, Mullin, Richter & Hampton LLP
New York, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

      Before the Court is Defendant's motion to dismiss.  (ECF No. 15.)  For the following

reasons, Defendant's motion is GRANTED in part and DENIED in part.

## I.      **BACKGROUND**

###     A.    **Facts**

      For purposes of this motion, the Court accepts as true the facts, but not the conclusions,

alleged by Plaintiff in his First Amended Complaint.  (*See* ECF No. 12 ("FAC").)

      The Stop & Shop Supermarket Company ("Defendant" or "Stop & Shop") manufactures

and sells adhesive lidocaine pain relief patches under its private label brand, CareOne (the

"Product").  (*Id.* ¶¶ 1, 68.)  The Product is sold in boxes that retail for $9.79 each and contain six

patches per box.  (*Id.* ¶ 79.)  Plaintiff purchased the Product at various locations, including a Stop

& Shop supermarket in West Haverstraw, New York, between May 2020 and November 2022.

(*Id.* ¶ 80.)

       The front label of the Product states that it is a "Maximum Strength Lidocaine Pain Relief

Patch[]," describes the Product as "4% Lidocaine/Topical Anesthetic," and states that the

Product "Desensitizes Aggravated Nerves" and provides "Up to 8 Hours" of "Numbing Relief."

(*Id.* ¶ 1.)  The front label also includes a circular seal with the designation "Rx" and the

statement "Our Pharmacists Recommend" (the "Seal"), and invites consumers to "Compare to

the active ingredient in Salonpas® Lidocaine Patch*."  (*Id.*)  A picture of the front label included

in Plaintiff's FAC is reproduced below.



(*Id.*)

Relying on the "Up to 8 Hours" language on the Product's front label, Plaintiff alleges that consumers expect that the Product "will adhere to their bodies for no less than eight hours," (*id.* ¶ 29), and that this expectation is reinforced by the directions on the Product's back panel, which instruct consumers to "apply 1 patch at a time to affected area, not more than 3 to 4 times daily" and to "remove patch from the skin after at most 8 hours of application," (*id.* ¶ 30). An excerpt of the back label included in Plaintiff's FAC is reproduced below.



(*Id.*)

Plaintiff maintains that both the language on the front label and the Product's directions are misleading because "the Product cannot adhere for any time even approaching eight hours," (*id.* ¶ 31), "[s]tudies have shown the Product is unable to adhere to the skin for more than four hours, often peeling off within minutes of light activity, nowhere near the eight-hour usage time indicated," (*id.* ¶ 32), and the Product's "inability to adequately adhere during normal use renders the adhesion claim misleading due to the significant disparity between what is promised and what is delivered," (*id.* ¶ 33).

Plaintiff also maintains that the term "Maximum Strength" on the Product's front label is misleading because "prescription lidocaine patches exist on the market that deliver greater amounts of lidocaine to the user," (*id.* ¶ 36), based on both the percentage of lidocaine in those patches and their "next-generation adhesive mechanisms that allow them to remain affixed to the wearer's body for at least twelve hours under normal conditions," (*id.* ¶¶ 37-38), and that

because the Product cannot "adhere for anywhere close to eight hours . . . [it] cannot deliver the 'Maximum Strength' amount of lidocaine," (*id.* ¶ 45).  Plaintiff further contends that because "the Product is explicitly compared to Salonpas on its front label, 'maximum strength' is misleading because the . . . [P]roduct contains roughly forty percent less lidocaine, even though they have similar or identical dimensions."  (*Id.* ¶ 42.)  Plaintiff alleges that the United States Food and Drug Administration ("FDA") has "cautioned manufacturers of [over-the-counter ("OTC")] analgesic products against making 'maximum strength' claims because higher strength and greater potency versions of such items were available with a prescription."  (*Id.* ¶ 39.)

Further, Plaintiff alleges that the statements "Desensitizes Aggravated Nerves" and "Numbing Relief" on the Product's front label are misleading in that they imply that using the Product "will completely block and numb nerves and pain receptors, eliminate responses to painful stimuli, and treat neuropathic and musculoskeletal pain, including back and spinal pain," (*id.* ¶ 46), because consumers "associate such statements with medical treatments requiring a prescription and FDA approval," (*id.* ¶ 48).

Finally, Plaintiff alleges that the Seal on the Product's front label is misleading because its "Rx" symbol and "Our Pharmacists Recommend" statement would lead reasonable consumers to expect that the Product is prescription strength.  (*See id.* ¶¶ 51-56.)

Plaintiff maintains that he "paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it," (*id.* ¶ 84), and that "[t]he value of the Product . . . was materially less" than what he paid for it, (*id.* ¶ 85).

B.      **Procedural History**

Plaintiff filed his initial Complaint on November 17, 2022.  (ECF No. 1.)  On March 27, 2023, Defendant filed a pre-motion letter in anticipation of a motion to dismiss.  (ECF No. 8.)  I held a pre-motion conference on April 21, 2023, at which I granted Plaintiff leave to amend and set a briefing schedule.  (*See* Minute Entry dated Apr. 21, 2023.)

The operative complaint, Plaintiff's FAC, was filed on May 10, 2023, and asserts claims for:  (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"); (2) violations of "State Consumer Fraud Acts;" (3) breaches of express warranty and the implied warranty of merchantability and violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; (4) common law fraud; and (5) unjust enrichment.  (FAC ¶¶ 94-117.)  Plaintiff wishes to represent a class of all persons residing in New York who purchased the Product within the statute of limitations, as well as a separate multi-state class of similar purchasers from New Jersey, New Hampshire, and Rhode Island, (*id.* ¶¶ 87-93), and seeks both monetary damages and costs and expenses, including attorney's fees, (*id.* at 16).

The instant motion followed.  (*See* ECF No. 15.)  In a footnote in his Opposition, Plaintiff withdrew his claims for violations of "Multi-state Consumer Fraud Acts," the implied warranty of merchantability, and the MMWA.  (ECF No. 18 ("P's Opp.") at 1 n.1.)[1]

---

[1] One of Plaintiff's lawyers, Spencer Sheehan, regularly brings such claims and then withdraws them in the face of a motion to dismiss.  *See, e.g.*, *Reyes v. Upfield US Inc.*, No. 22-CV-6722, 2023 WL 6276685, at *1 n.1 (S.D.N.Y. Sept. 26, 2023) (withdrawing breach of implied warranty and MMWA claims); *Beers v. Mars Wrigley Confectionery US, LLC*, No. 21-CV-2, 2022 WL 493555, at *2 (S.D.N.Y. Feb. 17, 2022) (withdrawing negligent misrepresentation, fraud, injunctive relief, breach of express and implied warranty, and MMWA claims); *Clark v. Blue Diamond Growers*, No. 22-CV-1591, 2023 WL 4351464, at *1 (N.D. Ill. July 5, 2023) (withdrawing implied warranty and MMWA claims).  The Court questions how counsel can continue to bring such claims in good faith, as he apparently knows he will be unable to justify them.

## II.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"In considering a motion to dismiss . . . pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  Here, Defendant argues that the full label of the Salonpas lidocaine patch identified in the FAC, (*see* FAC ¶¶ 2, 6, 42), may be properly reviewed by the Court because it is incorporated in the FAC by reference, (*see generally* ECF No. 17).  I am dubious that that is the case, but "it is unnecessary to decide whether [the Salonpas label] is integral to or incorporated by reference into the [FAC] because the Rule 12(b)(6) motion may be decided without reference to [it]."  *Parks v. Saltsman*, No. 20-CV-6384, 2020 WL 6365121, at *7 (W.D.N.Y. Oct. 28, 2020).

## III.   DISCUSSION

### A.   New York General Business Law Claims

Plaintiff's first cause of action arises under Sections 349 and 350 of the GBL.  The former prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," N.Y. Gen. Bus. Law § 349, and the latter prohibits "[f]alse advertising in the conduct of any business, trade or commerce," *id.* § 350.  To state a claim under either section, a plaintiff must plausibly allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

"New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading:  whether the alleged act is likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022).  "To survive a motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers."  *Id.* Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled."  *Id.* "Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer."  *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021).

Plaintiff alleges that the Product's labeling is materially misleading because:  (1) the statement "Up to 8 Hours" erroneously suggests to consumers that the Product "will adhere to their bodies for no less than eight hours" when in fact the Product "becomes detached after less than one hour," (P's Opp. at 4-5); (2) the statement "Maximum Strength" suggests to consumers that the Product contains the maximum amount of lidocaine available in patch form, which it does not, (*see id.* at 5-7); and (3) the statements "Desensitizes Aggravated Nerves" and "Numbing Relief" suggest that the Product will "completely block and numb nerves and pain receptors," which it does not, (*id.* at 8).[3]

---

[3] The FAC also includes allegations concerning the Seal on the Product's front label, (*see* ¶¶ 51-56), which Defendant briefly addresses in its memorandum of law, (*see* D's Mem. at 4, 9 n.4).  Because Plaintiff failed to address those arguments in opposition, (*see generally* P's Opp.), claims based on those allegations are deemed abandoned.  *See McCormick v. County of*

Defendant contends that none of those statements would be misleading to a reasonable consumer.  (*See* ECF No. 16 ("D's Mem.") at 7-11.)  The Court disagrees in part, and finds that Plaintiff has plausibly alleged that that a reasonable consumer would in fact be misled by the statement "Up to 8 Hours" on the Product's label.  But Plaintiff's contentions as to the Product's "Maximum Strength," "Numbing Relief," and "Desensitizes Aggravated Nerves" statements would not mislead a reasonable consumer.

### 1.     "Up to 8 Hours"

Plaintiff maintains that the statement "Up to 8 Hours" on the Product's front label causes consumers to "expect it will adhere to their bodies for no less than eight hours."  (FAC ¶¶ 1, 29.) Defendant, in turn, contends that Plaintiff advances a strained reading because the words "up to" establish a ceiling, not a floor, and courts have "recognized that 'up to' statements 'are generally not construed as concrete promises about a product's maximum yield.'"  (D's Mem. at 8 (quoting *Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 212 (W.D.N.Y. 2022).)

Defendant is correct in part.  To be sure, "contrary to [Plaintiff's] contention, 'up to 8 hours' quite plainly does not mean 'no less than 8 hours or even longer.'"  *Agee v. Kroger Co.*, No. 22-CV-4744, 2023 WL 3004628, at *3 (N.D. Ill. Apr. 19, 2023); (*see* FAC ¶ 29 ("When consumers see the statement[] that the Product will provide 'Up to 8 Hours [of] Numbing Relief' . . . they expect it will adhere to their bodies *for no less than eight hours*.") (emphasis added).)  It is, however, "plausible to contend that the ['Up to 8 Hours'] language on the label indicates the patch can provide pain relief for *as long as* eight hours, and the label says nothing

_____

*Westchester*, 19-CV-2916, 2023 WL 2632204, at *14 (S.D.N.Y. Mar. 24, 2023) (collecting cases).  In any event, a reasonable consumer would have no difficulty seeing the words "Our Pharmacists Recommend" on the Seal and, finding the Product on store shelves with other OTC products – all of which could be purchased without a prescription – could not reasonably believe he was buying a prescription product.

about other factors relating to the patch that may . . . result in a much shorter period of pain relief." *Agee*, 2023 WL 3004628, at *3 (emphasis in original).

Moreover, "[i]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). A reasonable consumer buying the Product – which states that it provides "Up to 8 Hours [of] Numbing Relief," (FAC ¶ 1, 29), and directs users to "remove [it] from the skin after at most 8 hours of application," (*id.* ¶ 30) – would plausibly expect to be able to use the Product for approximately 8 hours, or at least something approaching 8 hours, based on that full context. *See Stevens v. Walgreen Co.*, 623 F. Supp. 3d 298, 303 (S.D.N.Y. 2022) ("The complaint raises a plausible inference that a reasonable consumer would be misled by [defendant's] packaging here. The packaging describes its lidocaine patches as stay-put flexible and instructs users to use one patch for up to 12 hours. In context, a reasonable consumer would plausibly expect to be able to use the patch for 12 hours.").[4] Yet, Plaintiff alleges, the Product does not come close to adhering

--------

[4] Neither *Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205 (W.D.N.Y. 2022), nor *Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2003) (*per curiam*), the two in-circuit cases on which Defendant relies, (*see* D's Mem. at 8), are sufficiently analogous to the instant case to compel a different conclusion.

In *Devey*, the district court cited to an unreported case from the Northern District of Illinois for the proposition that "up to statements are generally *not* construed as concrete promises about a product's maximum yield, particularly in relation to products such as ground coffee, for which it is well-known (*and as the Product label reflects*) that the greater the batch being prepared, the smaller the proportion of product that is necessary to produce a given strength." 635 F. Supp. 3d at 212 (first emphasis in original, second emphasis added). The *Devey* court further explained that because "a consumer following a brewing method listed on the Product's label could brew more than 90% of the maximum . . . servings described on the Product" and "plaintiff makes no allegation that the Product's representations as to the amount of coffee in each container (by weight) were inaccurate or misleading," the Product's label would not have misled a reasonable consumer as a matter of law. *Id.* But as the court in *Agee v. Kroger* explained, such reasoning concerning coffee yields is inapplicable here, because unlike those coffee labels, the lidocaine patch labels at issue "include[] no identification of any factors

for eight hours, but rather falls off, and therefore becomes useless, far sooner.  (*See* FAC ¶¶ 31-33.)

    In sum, and as in other similar lidocaine patch cases, Plaintiff has plausibly alleged that the statement "Up to 8 Hours" would lead a reasonable consumer "to believe that the [P]roduct will remain on the body and provide relief for as long as eight hours."  *Agee*, 2023 WL 3004628, at *3.  Because the Product allegedly fails to do so, Plaintiff has stated a viable GBL claim.  *See Stevens*, 623 F. Supp. 3d at 303 ("Because it is plausible that a reasonable consumer would be misled by Defendant's labels and omissions relating to [the] stay-put patches for use up to 12

---

that might limit the amount of time that the patch would remain adhered to the body and deliver relief."  2023 WL 3004628, at *3.

    Similarly, in *Fink*, the district court held that advertisements promising "an always on connection with speeds up to 3x faster than DSL and 100x faster than dial-up" were not deceptive under GBL § 349 because plaintiffs failed to "m[ake] specific allegations about the speed of their *overall* Internet connections" and "allege[d] only that their connection speeds were subpar with respect to a narrow subset of applications."  *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283-84 (S.D.N.Y. 2011) (emphasis in original), *aff'd*, 714 F.3d 739 (2d Cir. 2013).  The Second Circuit affirmed, explaining in a footnote that the district court correctly determined that the phrase "up to" was not misleading because "it would lead a reasonable consumer to expect that speeds *could be less* than the advertised . . . speeds," *Fink*, 714 F.3d at 740, 742 n.3 (emphasis added), and the *Fink* plaintiffs only alleged that their internet speeds were impacted when "access[ing] certain high bandwidth Internet applications," *id.* at 740.  In other words, because the *Fink* plaintiffs alleged that their internet connections did not work as advertised in limited circumstances, rather than that they consistently failed to do so, the use of the phrase "up to" in the advertisements at issue was not false and misleading.

    Here, unlike in *Devey* and *Fink*, the FAC does not allege that there is a minor or occasional discrepancy between the Product's advertised and actual performance.  Instead, Plaintiff maintains that "the Product cannot adhere for any time even approaching eight hours," (FAC ¶ 31) – in other words, that there are virtually no circumstances in which it performs as advertised.  Such allegations are sufficient to state a GBL claim, irrespective of the "up to" language on the Product's label.  *See Goshen v. Mut. Life. Ins. Co.*, 98 N.Y.2d 314, 322 (2002) (reinstating GBL claim where DSL service was advertised as "High speed Internet access up to 126X faster than your 56K modem" and plaintiffs alleged that the service "rarely, if ever, approaches the high speed expressly represented by defendants."); *see also Fink*, 837 F. Supp. 2d at 284 (expressly distinguishing *Goshen* and explaining that "plaintiffs' allegations [in *Goshen*] pertained to their Internet service as a whole, allowing the court to find that Plaintiffs had sufficiently stated a claim for deceptive acts" in violation of the GBL).

hours, Plaintiff's GBL claims survive."); *Gonzalez Rodriguez v. Walmart Inc.*, No. 22-CV-2991, 2023 WL 2664134, at *5 (S.D.N.Y. Mar. 28, 2023) ("[T]he amended complaint raises a plausible inference that a reasonable consumer would be misled by [defendant's] packaging on the two patch products.  After reading directions that state that a user should use one patch for up to 12 hours, a reasonable consumer would indeed plausibly expect to be able to use a single patch for a period approaching 12 hours.  Further, Plaintiffs do not allege that 12 hours is a guarantee; rather, they allege that the patches systematically fail to adhere for a time period close to 12 hours."); *Ary v. Target Corp.*, No. 22-CV-2625, 2023 WL 2622142, at *3 (N.D. Cal. Mar. 23, 2023) (plaintiff's allegations that "up to 8 hours" label on lidocaine patch is misleading because patches "systematically fail to adhere for 8 hours by large margins, sometimes within minutes, given their poor adhesion technology" were sufficient to survive motion to dismiss).

Accordingly, the "Up to 8 Hours" GBL claim survives to the extent it is based on the failure of the Product to adhere for a period approaching eight hours, but is dismissed to the extent it is based on the theory that it promises a minimum adherence of eight hours.

### 2.  "Maximum Strength," "Desensitizes Aggravated Nerves," and "Numbing Relief"

Plaintiff's allegations as to the phrases "Maximum Strength," "Desensitizes Aggravated Nerves," and "Numbing Relief," however, are on a different footing than the "Up to 8 Hours" claim.

As to the first statement, Plaintiff alleges that "Maximum Strength" is misleading because "prescription lidocaine patches exist on the market that deliver greater amounts of lidocaine to the user."  (FAC ¶ 36.)  But "[t]he argument that a consumer would expect an OTC product to be equivalent to the most powerful prescription medicine is a nonstarter." *Hodorovych v. Dollar Gen. Corp.*, No. 22-CV-3415, 2023 WL 3602782, at *3 (N.D. Ill. May 23,

2023).  "A reasonable consumer for purposes of a GBL . . . analysis does not lack common sense and is not assumed to be the least sophisticated consumer."  *Lissa Coppola, LLC v. Higbee*, No. 19-CV-678, 2020 WL 1154749, at *8 (W.D.N.Y. Mar. 10, 2020).  Such a consumer would plainly "understand[] that [OTC] products differ from products that are available with a prescription."  *Prescott v. Rite Aid Corp.*, No. 22-CV-5798, 2023 WL 2753899, at *2 (N.D. Cal. Apr. 3, 2023).[5]

―――――――――――――――――

[5] The FAC also alleges that that the phrase "Maximum Strength" is misleading because the FDA "cautioned manufacturers of OTC analgesic products against making 'maximum strength' claims because higher strength and greater potency versions of such items were available with a prescription," (FAC ¶ 39), and the Product is unable "to adhere for anywhere close to eight hours" and therefore "cannot deliver the 'Maximum Strength' amount of lidocaine," (*id.* ¶ 45).

These claims are meritless.  As to the first claim, Plaintiff's suggestion that the Product runs afoul of an unspecified FDA suggestion is "not relevant to determining whether a label is deceptive or misleading under GBL §§ 349-350" because "[t]here is no private right of action for breaches of FDA provisions, and violations of federal standards do not automatically translate into an actionable claim under GBL §§ 349-350."  *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020).  In any event, "Plaintiff cannot state a claim because, for reasons described above, the [Maximum Strength language] alleged to violate the FDA regulations is not so inherently deceptive as to be misleading to a reasonable consumer under [the] GBL."  *Hawkins v. Coca-Cola Co.*, No. 21-CV-8788, 2023 WL 1821944, at *8 (S.D.N.Y. Feb. 7, 2023); *see Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) (collecting cases).

As to the claim concerning adhesion, (*see* FAC ¶ 45), a reasonable consumer would understand that "[t]he phrase 'Maximum Strength' on the label plainly refers to the strength of the medication, not efficacy or results."  *Stevens*, 623 F. Supp. 3d at 305 n.3.  "Because 4% is . . . the maximum allowable lidocaine concentration in an OTC patch, the 'maximum strength' label is not deceptive."  *Hodorovych*, 2023 WL 3602782, at *3.  To the extent the claim is that the maximum quantity of medication cannot be delivered because the patch falls off too soon, that is not an allegation that the strength is misleadingly described, but rather is a claim that duplicates the "8 hour" claim, which I have found plausible.

Plaintiff also alleges that the FDA was concerned that other more potent products "could appear in proximity to those represented as 'maximum strength' on store shelves," (FAC ¶ 40), and that consumers would be misled if those other products were labeled "as 'regular strength' even though both had the same amount of medication and/or active ingredients," (*id.* ¶ 41). Putting aside that the FAC provides no source for what the FDA thought, this claim is not plausible both because by Plaintiff's own account, the actual strength of a lidocaine patch is not

Plaintiff purchased the Product without a prescription at a supermarket.  (*See* FAC ¶¶ 1, 80.)  In such circumstances it is simply not plausible that he "underst[ood] the phrase 'maximum strength' to mean the highest dose that money can buy."  *Prescott*, 2023 WL 2753899, at *2; *see Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he Court [must] apply its common sense when determining the plausibility of a claim – common sense dictates that no reasonable consumer could plausibly think [what plaintiff thought] when faced with overwhelming evidence to the contrary.").[6]

_____

based on the "amount of medication and/or active ingredients," (*id.*), but rather is based on the mass of the medication in relation to the mass of the adhesive per patch, (*id.* ¶ 44), and because there is no allegation that in fact the Product was on store shelves with products labeled "regular strength" that were stronger than Defendant's product.  Similarly unavailing is Plaintiff's contention that the Product's statement, "Compare to the active ingredient in Salonpas Lidocaine Patch," (*id.* ¶¶ 1-2), is misleading, (*see id.* ¶ 42 ("[G]iven that the Product is explicitly compared to Salonpas on its front label, 'maximum strength' is misleading because [it] contains forty percent less lidocaine, even though they have similar or identical dimensions")).  Because the mass of a patch's adhesive is not the same as the dimensions of the patch, it seems that a product could have a lower total quantity of lidocaine and still be of the same strength.  In any event, Defendant does not compare the Product's strength to that of Salonpas, but simply claims that the two have the same active ingredient, (*id.* ¶ 1), and Plaintiff does not suggest that they do not, *see Hardy v. Olé Mexican Foods, Inc.*, No. 22-1805, 2023 WL 3577867, at *2 (2d Cir. May 22, 2023) (affirming dismissal of GBL claim where alleged deceptive statement was "[g]laringly absent from the [product's] packaging").

[6] Judge Oetken has allowed nearly identical "Maximum Strength" GBL claims to proceed in two cases.  *See Stevens*, 623 F. Supp. 3d at 305 (holding that "it is plausible that a reasonable consumer would understand the patches to contain and deliver the maximum amount of lidocaine available in patch form, and the complaint raises a plausible inference that that is not the case, because there are prescription strength lidocaine patches that contain 5% lidocaine" and determining whether "prescription-strength patches are . . . proper comparators" is a "fact-intensive dispute[] not appropriate for resolution [at the motion to dismiss stage]"); *Gonzalez Rodriguez*, 2023 WL 2664134, at *4 (holding that "a reasonable consumer would understand 'maximum strength' to mean that the patch . . . contains the maximum amount of lidocaine available on the market for that type of product").

This Court respectfully disagrees with those holdings.  "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense," *Iqbal*, 556 U.S. at 663-64, and in my view both suggest that reasonable consumers are aware that the phrase "maximum strength" on the label of an OTC

As to the "Desensitizes Aggravated Nerves" and "Numbing Relief" statements, Plaintiff alleges that they are misleading because they imply the Product "will completely block and numb nerves and pain receptors, eliminate responses to painful stimuli, and treat neuropathic and musculoskeletal pain, including back and spinal pain."  (FAC ¶ 46.)  These are not plausible claims.

Simply put, the Product's label is devoid of any statement that the Product will "completely block" or "eliminate" anything.  Indeed, it expressly states that the Product only provides "temporary relief."  (FAC ¶ 34; *see id.* ¶¶ 1-2, 30.)  No reasonable consumer would view the Product's label and conclude that the Product completely blocks and numbs nerves and pain receptors and eliminates responses to painful stimuli.  *See Hodorovych*, 2023 WL 3602782, at *3 (rejecting plaintiff's argument "that the phrase 'numbing relief' is deceptive because it 'falsely implies it completely numbs pain receptors'" because "plaintiff conjures language that simply does not appear on the Product's label"); *cf. Hardy v. Olé Mexican Foods, Inc.*, 616 F. Supp. 3d 247, 251 (W.D.N.Y. 2022), *aff'd*, 2023 WL 3577867 (2d Cir. May 22, 2023) ("No reasonable consumer would view the representations relied upon by Plaintiff and automatically conclude the tortillas were manufactured in Mexico when the representations say nothing about the country of origin and the disclaimer on the back of the packaging expressly states where the

---

product found on store shelves indicates that it is the strongest dose available without a prescription and that a stronger dose may be available from a pharmacist with the authorization of a doctor.  This is particularly so where, as here, the allegations in the Complaint demonstrate that the OTC product draws no direct comparisons with products available with a prescription. *See Prescott*, 2023 WL 2753899, at *2 (respectfully disagreeing with courts that "broadly held that whether prescription-strength products are the 'proper comparators' for over-the-counter products is a 'fact-intensive dispute not appropriate for resolution' on a motion to dismiss" because "statements like 'maximum strength' are generally understood as comparisons to other over-the-counter products.") (quoting *Stevens*, 628 F. Supp. 3d at 305).

tortillas are made.").  Indeed, Plaintiff does not even claim to have believed that the Product would completely block or eliminate pain.

In sum, because neither the "Maximum Strength" nor the "Desensitizes Aggravated Nerves" and "Numbing Relief" statements on the Product's label would mislead a reasonable consumer acting reasonably, Plaintiff's GBL claims predicated on those statements are dismissed.

**B.**    **Plaintiff's Remaining Claims**

Plaintiff also advances claims for common law fraud, breach of express warranty, and unjust enrichment.

**1.  Fraud**

To state a claim for common law fraud a plaintiff must show that:  "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance."  *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010).  Fraud claims must be pleaded "'with particularity.'"  *Id.* at 481 (quoting Fed. R. Civ. P. 9(b)).  To do so, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).  While "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  "A strong inference of fraudulent intent requires that a plaintiff plead (1)

facts to show that defendants had both motive and opportunity to commit fraud or (2) facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Bermudez v. Colgate-Palmolive Co.*, No. 21-CV-10988, 2023 WL 2751044, at *12 (S.D.N.Y. Mar. 31, 2023).

Here, Plaintiff's fraud claim fails because he does not even try to plead facts giving rise to a strong inference of fraudulent intent. The closest he comes is the allegation that "Defendant is part of one of the largest international conglomerates selling consumer goods, with immense resources and the ability to ensure the products it sold were represented truthfully, yet willingly failed to do so." (FAC ¶ 116.)

Such a sparse, conclusory allegation – which sheds virtually no light on Defendant's state of mind – is plainly insufficient to support an inference of fraudulent intent. *See, e.g.*, *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 250 (S.D.N.Y. 2021) (rejecting allegation that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front labels, when it knew its statements were neither true nor accurate and could mislead consumers" as too conclusory to establish fraudulent intent); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021) (dismissing fraud claim where "[t]he complaint only contains the conclusory allegation that Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers."); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 585 (S.D.N.Y. 2021) (allegation that "[d]efendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on the front label, when it knew its statements were not true nor accurate" to be "conclusory" and "fall short of the Rule 9(b) standard"); *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *13 (S.D.N.Y.

Mar. 21, 2022) (rejecting as insufficient the allegation that "Defendant's fraudulent intent is evinced by its knowledge that the Products' abilities were not consistent with its representations.").[7]

  Accordingly, Plaintiff's fraud claim is dismissed.

## 2. Express Warranty

  Plaintiff alleges that Defendant breached an express warranty.  An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y. U.C.C. Law § 2-313(1)(a).  "While no formal wording is necessary to create an express warranty, there must be a representation of fact or specific promise about the product, rather than an expression of opinion."  *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) (citing N.Y. U.C.C. Law § 2-313(2)).

  Additionally, "[t]o assert a breach of warranty claim under New York Law, the buyer must within a reasonable amount of time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18, 2022).  "To adequately plead the pre-suit notice requirement, plaintiffs must provide factual allegations – such as the date and method plaintiffs sent a pre-suit notice – supporting the contention that they notified the defendant of  the alleged breach within a reasonable time."  *Dwyer*, 598 F. Supp. 3d at 155.  Here, the FAC alleges only that "Plaintiff recently became aware of Defendant's breach of the Product's warranties," (FAC ¶ 109), and that "Plaintiff provided or provides notice to Defendant . . . that it breached the Product's warranties," (*id.* ¶ 110).  Such a vague allegation "is insufficient to avoid dismissal."  *Gordon*, 2022 WL 836773, at *14 (collecting cases).

---

  [7] Mr. Sheehan was counsel in all four of these cited cases.

Perhaps mindful of this deficiency, Plaintiff argues that breach of express warranty notice requirements "'have long been jettisoned in New York' for retail sales." (P's Opp. at 9 (quoting *Gavilanes v. Gerber Prods. Co.*, No. 20-CV-5558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021).) But, as Defendant points out, "*Gavilanes* . . . has been repeatedly criticized by courts in this district as misapplying New York law," (ECF No. 19 at 8 (collecting cases)), and reflects a disfavored minority view, *see Wheeler v. Topps Co., Inc.*, 652 F. Supp. 3d 426, 433-34 (S.D.N.Y. 2023) (collecting cases). In any event, the *Gavilanes* exception to the notice requirement "is limited to products . . . that cause physical injury," *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 n.3 (S.D.N.Y. 2020), and "does not apply where, as here, a plaintiff alleges only economic injury," *Gordon*, 2022 WL 836773, at *14; *see Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 685 (S.D.N.Y. 2021) (explaining that "[t]he pre-suit notice requirement is waived only in cases involving personal injury" and rejecting breach of express warranty claim where "[p]laintiff has not alleged any physical or personal injury as a result of Defendant's alleged breach").[8]

Accordingly, Plaintiff's express warranty claim must be dismissed.[9]

### 3. Unjust Enrichment

To state a claim for unjust enrichment under New York law a plaintiff must show that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be

---

[8] Despite serving as counsel in *Gordon*, *Budhani*, and *Wheeler*, Mr. Sheehan persists in advancing this "sweeping argument that the pre-suit notice requirement has long been jettisoned in New York state for retail consumers," seemingly oblivious to repeated admonishments that "reliance on any such exception is misplaced and ineffectual." *Vivar v. Apple Inc.*, No. 22-CV-347, 2023 WL 3847163, at *3 (S.D.N.Y. June 6, 2023).

[9] The Court therefore need not address the parties' remaining arguments as to whether the FAC plausibly alleges that the statements on the Product's label are affirmations of fact or promises giving rise to an express warranty.

inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015). "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016). Courts will routinely dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim." *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013).

Here, Plaintiff "makes no factual allegations unique to the unjust enrichment claim and fails to explain why the unjust enrichment claim is distinct from . . . [his other] claims." *Advanced Knowledge Tech, LLC v. Fleitas*, No. 21-CV-992, 2021 WL 6126966, at *5 (S.D.N.Y. Dec. 28, 2021); *see Ebin*, 2013 WL 6504547, at *7 (dismissing unjust enrichment claim because plaintiffs failed to explain how it was not duplicative of negligent misrepresentation, fraud, and breach of warranty claims); *Barreto*, 518 F. Supp. 3d at 808-09 (dismissing unjust enrichment claim because based on same facts as consumer deception claims); *Alce v. Wise Foods, Inc.*, No. 17-CV-2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative of GBL §§ 349 and 350 claims).

Therefore, Plaintiff's unjust enrichment claim is dismissed.[10]

---

[10] Plaintiff's assertion that he is "permit[ted] . . . to set out 2 or more statements of a claim or defense alternatively or hypothetically," (P's Opp. at 10), does not alter this outcome. While Plaintiff is "correct that unjust enrichment may be pleaded in the alternative . . . it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Bermudez*, 2023 WL 2751044, at *15; *see Nelson v. MilllerCoors, LLC*, 246 F. Supp.3d 666, 679 (E.D.N.Y. 2017).

**C.**   **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments

previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*,

514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In his Opposition, Plaintiff requested that I either deny Defendant's motion or grant him

leave to amend a second time.  (*See* P's Opp. at 11.)  But because most of "[t]he problems with

the dismissed claims are substantive" and "better pleading will not cure them," *Leschak v.*

*Raiseworks, LLC*, No. 14-CV-8072, 2016 WL 11695068, at *10 (S.D.N.Y. Mar. 7, 2016),

amendment would largely be futile, *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y.

2019); *see Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 97 (S.D.N.Y. 2021);

*Roundtree v. N.Y.C.*, No. 19-CV-2475, 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021)

(collecting cases).

Moreover, Plaintiff – with the benefit of a pre-motion letter from Defendant, (*see* ECF

No. 8) – has already amended his Complaint once.  Generally, the failure to fix deficiencies in an

initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to

deny leave to amend.[11]  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d

243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint

---

[11] Plaintiff acknowledged as much in his letter response to Defendant's pre-motion letter.
(*See* ECF No. 10 ("Plaintiff is aware of the Court's practices and preferences and understands
that if it grants leave to file an amended complaint, before Defendant has filed its formal Motion,
he may not have another opportunity to amend . . . .").)

when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiff has not suggested that he is in possession of facts that would cure the deficiencies identified in this ruling.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure the deficiencies identified by the Court").

Accordingly, the Court declines to grant Plaintiff leave to amend a second time.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part.  The case will go forward on Plaintiff's GBL claim premised on the allegation that the "Up to 8 Hours" statement on the Product's label is misleading because the Product fails to adhere for a period even approaching eight hours.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 15).  On December 18, 2023 at 4:00 PM, the parties shall call the Court's teleconference line, 877-336-1839, and enter access code 1047966#, to attend a telephonic status conference.  My chambers will provide the parties with a copy of the Court's Civil Case Discovery Plan and Scheduling Order, which the parties are to fill out by agreement and file in advance of the conference.

**SO ORDERED.**

Dated: November 17, 2023
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.